UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jacqueline Bell,                                            Case No. 3:21-cv-770

          Plaintiff,

     v.                                                     MEMORANDUM OPINION
                                                            AND ORDER

Toledo Gaming Ventures, LLC,

          Defendant.

## I.     INTRODUCTION

On April 12, 2021, Plaintiff Jacqueline Bell filed a complaint against her former employer,

Defendant Toledo Gaming Ventures, LLC, asserting claims of race and sex discrimination,

retaliation under federal and state law, and intentional infliction of emotional distress. (Doc. No. 1).

On September 14, 2022, Defendant moved for summary judgment on all of Plaintiff's claims. (Doc.

No. 22). Plaintiff opposed the motion, (Doc. No. 27), and Defendant filed a reply. (Doc. No. 32).

Plaintiff then moved for oral argument or, in the alternative, to file a surreply, (Doc. No. 33), and

Defendant opposed this motion. (Doc. No. 34). For the reasons stated below, I grant Defendant's

motion for summary judgment and deny Plaintiff's motion for oral argument or surreply briefing.

## II.     BACKGROUND

Bell was hired by Defendant as a Slot Supervisor on April 23, 2012. (Doc. No. 22-2 at 36,

40). During her time as Slot Supervisor, Bell received three written warnings for failing to follow

gaming floor rules, (Doc. No. 22-3 at 71-73), under Defendant's progressive discipline policy

("PDP").[1]   (Doc. No. 22-2 at 39; *see also* Doc. No. 22-3 at 66-67).   Bell testified she did not believe these disciplines were discriminatory or retaliatory.   (Doc. No. 22-2 at 42).

In 2017, Bell received a promotion to EVS Assistant Manager.   (*Id.*).   In October 2017, after a previous coaching pursuant to the PDP, Bell received a written warning for unprofessional behavior and unsatisfactory performance.   (Doc. No. 22-3 at 74).   In December 2017, Defendant received multiple complaints about Bell's conduct as a supervisor through its reporting hotline. (Doc. No. 22-6 at 6-10).   For example, it was reported Bell was "aggressive and overbearing", "unprofessional", "treat[ed] her employees with disrespect", and exhibited "favoritism".   (*Id.*). Defendant investigated these complaints and as a resolution, recommended transferring Bell to an equivalent supervisory position.   (*Id.* at 8).   Around the same time, Bell received a final written warning for further unprofessional behavior.   (Doc. No. 22-3 at 75).   Bell did not believe either of these disciplines were motivated by discrimination or retaliation.   (Doc. No. 22-2 at 48-49).

Bell believed the complaints by her employees stemmed from the personal jealousy of some of her team who had wanted to be promoted to the position that Bell now held.   (Doc. No. 22-2 at 44-45).   Bell believed these bypassed individuals were encouraging others to complain about her work and in general, caused her issues because they did not like that she was promoted instead of them.   (*Id.*).   Bell alleged that management did not support her in her attempts to correct these employees' bad behavior.   (Doc. No. 27 at 2-3).[2]

---

[1] The PDP includes four steps: documented coaching, written warning, final written warning, and termination.   (Doc. No. 22-3 at 66-67).   Discipline is active for PDP purposes for one year, at which point it rolls off an employee's record.   (*Id.*).

[2] Although Bell's counsel cites to Exhibit 2 in support, aside from the conclusory statements made in her responsive brief to the Ohio Civil Rights Commission ("OCRC"), there is no documentation related to any 2017 incidents in this exhibit nor are there reports of these employee's allegedly disrespectful behavior towards Bell.   (*See* Doc. No. 28 at 4-88).   Unfortunately, the failure to cite record evidence is endemic throughout Bell's opposition, as I comment upon later.

On December 22, 2017, Bell was transferred to the position of Food & Beverage Assistant Manager at the Take 2 Grill and assigned the third shift, which typically covered 10 p.m. to 6 a.m. (Doc. No. 22-2 at 49-50). Part of her role in this position was to supervise the restaurant's unionized cooks and attendants, but Bell testified these workers took excessive breaks and often needed to be prompted to work. (*Id.* at 51). She also testified they were "rude and disrespectful to me. They were rude to each other. They were rude to customers, and they were rude to management." (*Id.* at 50-51).

Employee complaints about Bell's management style followed her to the new position. (*See* Doc. No. 22-6 at 12, 17-19). Defendant investigated each of these complaints but in only one instance did Defendant counsel Bell on her actions. (*Id.* at 18). Bell also had complaints about the employees and reported incidents of disrespectful behavior and vulgar language. (Doc. No. 28 at 21-22).

On September 21, 2018, Defendant provided further coaching to Bell regarding how to professionally handle disgruntled guests and employees. (Doc. No. 22-3 at 80-82). This coaching was in response to a belligerent customer who Bell claimed was intoxicated and "repeatedly used the 'N' word in talking to [her]." (Doc. No. 28 at 6). Bell alleged she provided witness information to HR regarding this situation, but they refused to follow up to validate Bell's account. (*Id.*). Bell also claimed management refused to investigate other incidents of customers using racial slurs. (*Id.* at 6, 17, 37).

On March 14, 2019, Bell received a written warning for unsatisfactory performance and abuse of authority when she had an hourly team member clock out and leave work to retrieve another manager so that this manager could cover for Bell, who was experiencing a toe injury. (Doc. No. 22-2 at 63-64; Doc. No. 22-3 at 83).

Bell filed her first OCRC charge on April 17, 2019, claiming she was subject to a hostile work environment based on her race and sex.  (Doc. No. 22-5 at 22).  She complained of disparate treatment and improper discipline.  (*Id.*).  In her complaint she mentioned one specific incident where she claimed a white employee told her to "kiss his fat white ass." (*Id.*).[3]  She also claimed another white employee was circulating a petition to get her fired. (*Id.*).  Bell stated that despite reporting these incidents, management did nothing.

Bell's complaints about her employees continued.  She reported being threatened with a knife by a kitchen worker; being verbally and physically threatened by another employee; and employees being generally disrespectful and insubordinate.  (*See, e.g.*, Doc. No. 28 at 7-8, 12, 24, 32, 34, 38).

In May 2019, Bell received a coaching regarding "Professionalism Expectations" and how to properly communicate with and discipline her employees.  (Doc. No. 22-3 at 84).

Bell was issued a final written warning on August 2, 2019, for abusing her authority and unsatisfactory performance.  (Doc. No. 22-5 at 7).  Bell passed along an employee's written statement alleging harassment by other employees at Take 2 to Human Resources.  (*Id.*).  Upon investigation it was discovered Bell had allegedly coerced the employee to write a statement about how the Take 2 employees spoke negatively about Bell and pressured her to add additional allegations that benefited Bell.  (*Id.*).  It was also alleged that Bell forced this employee to write a statement on her behalf under false pretenses. When the employee learned that Bell intended to use the statement in her lawsuit, the employee sought to retract the statement, but Bell refused to return it.  (*Id.*).

---

[3] In her contemporaneous account of this incident to HR, Bell claimed the employee told her to "kiss my ass."  (Doc. No. 28 at 20).

Bell denied the characterization of events that led to this discipline, refused to sign the discipline, and appealed it.  (*Id.* at 8-10; Doc. No. 22-4 at 8).  Bell testified that she did not coerce or force the employee to write anything, rather she encouraged the employee to write down her concerns so that they can be passed along to HR.  (Doc. No. 22-4 at 8-9).  Bell claimed all the other allegations in the discipline were lies.  (*Id.* at 10).  The discipline was upheld.  (Doc. No. 22-5 at 13, 15).

On December 27, 2019, HR received a complaint about Bell from one of her employees. (Doc. No. 22-6 at 40).  Upon investigation it was discovered that earlier in the day Bell sent an employee home early, a practice she knew was against Defendant's policies.  (*Id.*; Doc. No. 22-2 at 65-66; Doc. No. 28 at 34).  Again, Defendant issued discipline to Bell for lack of professionalism and unsatisfactory performance.  (Doc. No. 22-6 at 40).  Bell was suspended pending an investigation, and because she was in the final step of the PDP, Bell was subsequently terminated on January 7, 2020.  (*Id.*; Doc. No. 22-5 at 18).

She filed a second OCRC complaint on January 17, 2020, alleging she was terminated "without provocation or written just cause[.]"  (Doc. No. 22-5 at 23).  Bell alleged this was in retaliation for her earlier filing with the OCRC in April 2019.  (*Id.*).

### III.    STANDARD

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party."  *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of "informing the district court of the basis

for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## IV.   ANALYSIS

Bell asserts her claims for relief based on indirect evidence.  Thus, I will analyze her claims under the *McDonnell Douglas* burden-shifting framework.  *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009).  Under *McDonnell Douglas*, the plaintiff first must establish a prima facie case.  *Id.*  If the plaintiff can do so, the burden shifts to the defendant to put forth a legitimate, non-discriminatory reason for its decision.  *Id.*  If the defendant provides such a reason, then the plaintiff must demonstrate the proffered reason was pretext.  *Id.*

Before beginning an analysis of Bell's substantive claims, I will address Defendant's request to strike numerous late-filed documents and portions of Bell's affidavit.  (Doc. No. 32 at 3-5, n. 7-8).

### A.  Requests to Strike

Bell timely filed her opposition to Defendant's motion for summary judgment on October 18, 2022.  (Doc. No. 27).  This briefing was accompanied by Bell's affidavit, and three exhibits representing her administrative filings to the OCRC in April 2019, and the decision of the Unemployment Compensation Review Commission.  (Doc. No. 28).   The next day Bell filed supplemental support for her opposition by way of the Declaration of Brenda Fugate.  (Doc. No. 29).  Then, on October 20, 2022, without explanation or leave of court, Plaintiff re-filed her opposition brief with the same supporting exhibits as those originally filed on October 18, 2022, although the exhibits were numbered differently.  (Doc. No. 30).  Plaintiff did not include the Fugate Declaration as an exhibit when she re-filed her opposition on October 20, 2022.  (*See* Doc. No. 30).  But on October 27, 2022, Plaintiff re-filed the same Fugate Declaration labeled as Exhibit 5 to the opposition brief.  (Doc. No. 31).

Defendant requests that I strike the opposition brief filed on October 20, 2022, as well as the twice-filed Fugate Declaration docketed on October 19 and October 27, 2022, as untimely.  (Doc. No. 32 at 3-5, n. 7-8).  Bell did not file a response to Defendant's request to strike nor did she seek leave of court to do so.  And while Bell did move for oral argument, or in the alternative, to file a surreply, the purpose of that request was to address "a significant disagreement regarding the purpose of summary judgment in a discrimination case."  (Doc. No. 33 at 1).  At no point in Bell's motion did she raise the need to address Defendant's request to strike as justification for further argument or filings.  (*See* Doc. No. 33).  Thus, I will treat Defendant's requests as unopposed.

"The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings."  *KCI USA, Inc. v. Healthcare Essentials, Inc.*, No. 1:14CV549, 2018 WL 1000048, at *1 (N.D. Ohio Feb. 21, 2018) (citing Fed. R. Civ. P. 12(f)) (as "limited to striking pleadings or portions of pleadings").  But the question remains whether I should

consider these filings. Bell provided no explanation as to why she re-filed her opposition brief on October 20, 2022, nor why she re-filed the Fugate Declaration on October 27, 2022. Because these documents were untimely filed and do not appear to differ from her previous filings, I will disregard them. *See Chicago Title Ins. Co. v. Regal*, No. 1:09 CV 01063, 2009 WL 10688287, at *1 (N.D. Ohio June 26, 2009) (disregarding late filed briefs rather than striking the filings).

With regard to the Declaration of Brenda Fugate filed on October 19, 2022, one day after the deadline for Bell to oppose summary judgment, Bell explained that she did not file it timely because "Ms. Fugate did not deliver the Declaration until after the Plaintiff's Opposition memo was filed." (Doc. No. 29 at 1). This is not an acceptable justification for the late filing as Bell was well aware of the deadline to submit her opposition – and in fact, had requested the date herself. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

Furthermore, there are other issues with Fugate's Declaration. Aside from questions about the lack of foundation or basis in personal knowledge, as Defendant notes, this individual "was never disclosed in Plaintiff's Rule 26[a] Initial Disclosures, her discovery responses, or her deposition." (Doc. No. 32 at 3, n. 6). Pursuant to Rule 37(c)(1), if a party fails to identify a witness as required by Rule 26(a) or (e),[4] "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

Allowing Bell to rely upon this undisclosed witness to bolster her case at the summary judgment stage would not be harmless, as Defendant was precluded from deposing or otherwise challenging the witness's statements during discovery, and Bell has not shown a substantial

---

[4] Fed. R. Civ. P. 26(e) requires a party to supplement any disclosure or discovery response in a timely manner.

justification for her failure to disclose the witness sooner. *See, e.g., Sexton v. Uniroyal Chem. Co.,* 62 F. App'x 615, 616 n.1 (6th Cir. 2003) ("Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material."); *Ronaldo Designer Jewelry, Inc. v. RDJ Internet & Social Media, Inc.,* No. 3:20-cv-496, 2023 WL 2169140, at *7 (W.D. Ky. Feb. 1, 2023) (precluding reliance on experts not previously disclosed pursuant to Rule 37 where plaintiff had no opportunity to depose them). Thus, I will disregard the Fugate Declaration.[5]

Turning now to Bell's affidavit, Defendant contends that paragraphs 6 and 7 are not based upon Bell's personal knowledge and thus, should not be considered. (Doc. No. 32 at 4-5); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit . . . must be based on personal knowledge, [and] set out facts that would be admissible in evidence . . ."). While it appears that the statements made in these paragraphs are hearsay or speculation, it is plausible that Bell was a direct recipient of information from these individuals and it is upon this information that she formed her belief. Regardless, "[i]n order for inferences, thoughts, and opinions to be properly include in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience and established by specific facts." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007).

Bell has not provided the specific facts upon which she could base her opinions about why her co-workers did not like her or reported their complaints to HR and not to her supervisor. *Id.* at 470 (disregarding opinion statements where affidavit fails to provide specific facts establishing the basis of affiant's opinion, such as who they spoke with and for what purposes). To the extent these paragraphs are not based upon personal knowledge, or the opinions expressed are not based upon specific, articulated facts, I will disregard them.

---

[5] This preclusion will have a limited effect as Bell does not cite to the Fugate Declaration at any point in her opposition. (*See* Doc. No. 27).

**B.      Motion for Summary Judgment**

I must mention before I begin my substantive analysis that Bell's counsel utterly failed to comply with Rule 56(c)'s requirement that the party opposing a summary judgment motion "cit[e] to particular parts of materials in the record" to demonstrate the existence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992) ("[Rule 56] requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues.").

For example, in Section D of the opposition entitled "Plaintiff has presented evidence sufficient to demonstrate a material issue of fact[,]" there are only two citations to the record in approximately six pages of allegedly fact-based argument.  (Doc. No. 27 at 22-28).  Furthermore, on the two occasions where an exhibit is cited,[6] it was a general reference as opposed to a specific page or document.  (*See id.* at 28) (citing "Exhibit 2").  Exhibit 2 is a multi-page exhibit representing approximately 80 unnumbered pages of email chains, disciplinary notices, and handwritten notes. (Doc. No. 28 at 4-83).

While I am "not obligated to scour the record to uncover issues of material fact for a jury to decide[,]" *Kiser v. Ohio*, No. 1:19-CV-323, 2021 WL 1145731, at *3 (N.D. Ohio Mar. 25, 2021) (citing *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–1480 (6th Cir. 1989)), in an abundance of caution and in fairness to Bell, I have reviewed her deposition and exhibits for relevant information.

---

[6] The other citation to the record is to Bell's affidavit.  Oddly, Bell did not offer even one citation to her own deposition testimony in the opposition and thus, it would be within my discretion to disregard even this testimony.   (*See* Doc. No. 27); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

### 1. **Retaliation**

Bell asserts claims of retaliation under both federal and state law.  "Section 1981 retaliation claims are governed by the same burden-shifting standards as Title VII retaliation claims."  *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001).  Further, "[b]ecause of these statutes' similar language and origin, Ohio courts have held that 'federal law provides the applicable analysis for reviewing retaliation claims' brought under Ohio Rev. Code § 4112.02(I)."  *Braun v. Ultimate Jetcharters, LLC,* 828 F.3d 501, 510 (6th Cir. 2016) (quoting *Baker v. Buschman Co.*, 713 N.E.2d 487, 491 (Ohio Ct. App. 1998)).

Establishing a prima facie case requires the plaintiff to show: (1) she engaged in a protected activity; (2) the protected activity was known to the defendant; (3) the defendant took adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Braun,* 828 F.3d at 510.

For purposes of its motion for summary judgment, Defendant only challenged the fourth element – causation.  (Doc. No. 22-1 at 15, n. 17).  Bell testified she was disciplined and terminated as retaliation for filing her April 2019 OCRC charge.  (Doc. No. 22-4 at 25).  Defendant argues Bell cannot establish causation because Bell had a long history of discipline and coaching preceding her April 2019 OCRC charge, and the temporal proximity between her filing the charge and her termination was too attenuated to infer causation.  (Doc. No. 22-1 at 15-16).  Bell does not make a substantive challenge to Defendant's argument in her opposition brief.  (*See* Doc. No. 27 at 20-21).

"To establish the causal connection required in the fourth prong, [Bell] must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not [engaged in protected activity]."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).  Causation may be inferred from temporal proximity or by showing

different treatment of similarly situated individuals. *Id.* Bell does not cite any record evidence in support of the causation element. (*See* Doc. No. 27 at 20-21).

In her argument, Bell appears to rely upon temporal proximity. (*See* Doc. No. 27 at 20-21). But she provides no legal authority in support of her claim that the approximately eight months between her OCRC charge and her termination is sufficiently close to infer causation. (*Id.*). In fact, such a gap is typically insufficient to infer causation. *See, e.g., Nguyen*, 229 F.3d at 566-67 ("[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months."); *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) (concluding "a roughly 75-day delay between her protected activity and an adverse employment action is not, standing alone, a convincing case for proving causation."); *Bush v. Compass Grp. USA, Inc.,* 683 F. App'x 440, 453-54 (6th Cir. 2017) (four to eight months is not sufficient for temporal proximity). Without other evidence, the Sixth Circuit has "rarely found a retaliatory motive based only on temporal proximity." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

Bell cites to no other record evidence from which I may infer causation– not even her own deposition testimony. But any inference of causation attributable to temporal proximity is lessened by the other evidence in the record. Bell had a long history of discipline preceding her filing of the April 2019 OCRC charge. (*See* Doc. No. 22-3 at 71-75, 83). She also received coaching from her supervisors on numerous occasions regarding her lack of professionalism. (*See* Doc. No. 22-3 at 74, 80-82, 84).

This pre-existing history of corrective action and discipline, many for the same conduct that she was ultimately terminated for, coupled with the later occurring instances of disciplinable conduct weigh against any inference of causation. *See, e.g., Vereecke*, 609 F.3d. at 401 (finding plaintiff's own behavior was independent motive for discipline and did not provide further inference of causation);

*Matheson v. USF Holland Inc.*, No. 1:05-cv-593, 2007 WL 397069, at *7 (S.D. Ohio Jan. 31, 2007) ("Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity.") (quoting *Smith v. Allen Health Sys.*, 302 F.3d 827, 834 (8th Cir. 2002)).

Accordingly, I conclude Bell has not presented sufficient evidence to support a prima facie case of retaliation under § 1981, Title VII, or Ohio law.

## 2. Race and Sex Discrimination

Bell asserts claims for race and sex discrimination under both federal and state law. Courts in the Sixth Circuit analyze state law claims for discrimination under the same standard as federal claims. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *see also Plumbers & Steamfitters Joint Apprenticeship Comm'n v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981) (applying Title VII case law to violations of Ohio's discrimination statute).

A prima facie case of race or sex discrimination requires a plaintiff to show: (1) she is a member of protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly situated non-protected employees were treated more favorably. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (citation and quotation marks omitted).

Defendant argues Bell is unable to establish the fourth element of her prima facie case for either race or sex discrimination. (Doc. No. 22-1 at 19-21). Bell did not challenge Defendant's argument as to her disparate treatment race discrimination claims nor did she present evidence demonstrating how a similarly situated non-protected individual was treated more favorably than her. (*See* Doc. No. 27). As Bell has failed to demonstrate her prima facie case of race discrimination with record evidence and otherwise failed to address Defendant's argument on summary judgment, I deem this claim abandoned. *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013)

(collecting cases that hold "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). Bell's disparate treatment race discrimination claims under § 1981, Title VII, and Ohio law fail.

Bell also has failed to present evidence of the fourth element of her prima facie case for her disparate treatment sex discrimination claim. (*See* Doc. No. 27 at 23). Bell contends that "according to Defendant's answers to Plaintiff's discovery requests, Ms. Bell was replaced by someone not of her protected class – a male." (*Id.*). Bell does not name this individual or provide any further information in her opposition. There is no citation to the record for this alleged fact nor has Bell attached the supposed interrogatory response by Defendant to her opposition. (*See id.*).

As this statement is nothing more than unsupported speculation, I find that Bell failed to carry her burden of production to establish a prima facie case of sex discrimination. *Talwar v. Catholic Health Partners*, 258 F. App'x 800, 806 (6th Cir. 2007) ("[A]ll we have before us on the question of whether Plaintiff was treated less favorably than others outside of h[er] protected class are Plaintiff's conclusory allegations. Such conclusory and unsupported allegations, rooted in speculation, do not meet the burden of the prima facie case.") (internal quotations and citation omitted); *see also Sperber v. Nicholson*, 342 F. App'x 131, 132 (6th Cir. 2009) (holding a prima facie case cannot be shown by "self-serving innuendo and speculation"). Accordingly, Bell's disparate treatment sex discrimination claim also fails.

### 3. Hostile Work Environment

To establish a prima facie case of hostile work environment, Bell must show: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her race or sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) the employer knew or should have known about the harassment and failed to act. *Stewart v. Esper*, 815 F. App'x 8, 20

14

(6th Cir. 2020).[7]  To evaluate a hostile work environment claim, courts "'look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

Although not clearly stated, Bell's opposition appears to present argument related to the fourth and fifth elements of a prima facie case of hostile work environment.[8]  Bell reiterated her subjective beliefs regarding a number of incidents and the discipline that she received, almost all without citation to record evidence and none which comply with Rule 56(c)'s directive, in an attempt to demonstrate ongoing harassment.  (*See* Doc. No. 27 at 24-28).  But for many of these incidents, Bell has failed to demonstrate how this alleged harassment was based upon her race or sex. *Thompson v. Wilkie*, No. 1:18CV1777, 2021 WL 5017400, at *22 (N.D. Ohio Aug. 31, 2021) ("[I]t is important to distinguish between harassment and discriminatory harassment, because Title VII prohibits only the latter.").

It is well-settled that a plaintiff's subjective belief is insufficient on its own to create a genuine issue of material fact.  *See, e.g., Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (stating "conclusory allegations and subjective beliefs [ ] are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); *Okojie v. Metro. Nashville Hosp. Auth.*, 584 F. Supp. 3d 543, 556 (M.D. Tenn. 2022) (collecting cases).  "The fact that [Bell] has alleged that [s]he was harassed by [Defendant] does not prove a prima facie case of hostile work environment.  [Bell] must

---

[7] Hostile work environment claims under Ohio law are analyzed under the same framework as federal claims.  *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 575 N.E. 2d 1164, 1168 (Ohio 1991).

[8] Bell does not cite to any legal authority to support her claim that complaints or conditions such as she experienced would support a hostile work environment claim.  (*See* Doc. No. 27 at 24-28).

also prove that [Defendant's] harassment was motivated by race." *Cooper v. Jackson-Madison Cnty. Gen. Hosp.*, 742 F. Supp. 2d 941, 955 (W.D. Tenn. 2010); *see also, e.g., Campbell v. Norfolk S. Corp.,* 876 F. Supp. 2d 967, 994 (N.D. Ohio 2012) (dismissing hostile work environment claims where plaintiff "has not established that race was a factor in these incidents."); *Bennett v. J-F Enter., Inc.*, No. 3:08-cv-2636, 2010 WL 6404084, at *5-6 (N.D. Ohio Dec. 10, 2010) ("Plaintiff offered no evidence that the discipline she received was based on race. Her assertions and speculations are not sufficient to defeat summary judgment."), *report and recommendation adopted*, 2011 WL 1230273 (N.D. Ohio Mar. 30, 2011).

Many of the incidents cited by Bell in her opposition appear to have no connection to Bell's race or sex. There is nothing about the six instances involving her employees or supervisors to which Bell cites in her opposition that objectively involve Bell's race or sex. *See Strickland v. City of Detroit*, 995 F.3d 495, 505 (6th Cir. 2021) ("The work environment must be both objectively and subjectively hostile."). For example, the December 2017 incident Bell cited involved employees complaining about Bell implementing a rotation policy for cleaning tasks – this is nothing more than an ordinary workplace complaint. (Doc. No. 27 at 25); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (distinguishing between the "ordinary tribulations of the workplace" and those sufficient to support hostile work environment).

Bell could still sustain a hostile work environment claim even if the behavior was not overtly racial or sexual, but to do so she "must present sufficient evidence to create an inference that but for [her] race or sex, the behavior would not have been undertaken." *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 753 (S.D. Ohio 2011) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463-64 (6th Cir. 2000). Bell has not cited to any evidence or made any legal argument to support this inference. (*See* Doc. No. 27).

16

Even if Bell had established the second element, she has not demonstrated that these incidents were sufficient to overcome the "high bar" necessary to demonstrate severe and pervasive conduct. *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017). The six incidents mentioned above occurred over the course of three years and do not evidence the necessary frequency to support a hostile work environment claim. *See, e.g., Burnette v. Wilkie,* No. 1:18-cv-1179, 2019 WL 4452388, at * 14 (N.D. OH Sept. 17, 2019) ("Isolated incidents of alleged harassment do not create a hostile work environment."); *Bennett*, 2010 WL 6404084, at *6 ("Two instances of discipline and a few vague, offhand statements targeting Plaintiff do not constitute extreme treatment."); *Bady v. Illinois Cent. R.R. Co.*, No. 2:21-cv-2693, 2023 WL 2482229, at *4 (W.D. Tenn. Mar. 13, 2023) ("That Plaintiff suffered two (or three [. . .]) minor incidents over more than two years of employment with Defendant is not the kind of frequency Title VII has in mind.").

While it is obvious that Bell disagreed with how she was treated by her supervisors, co-workers, and employees, "Title VII does not create a 'general civility code' and sporadic abusive language or offensive comments are not sufficient to support a claim." *Stewart*, 815 F. App'x at 21 (quoting *Faragher,* 524 U.S. at 778).

Bell does raise at least two instances where she was the victim of racially derogatory language used by customers. (Doc. No. 28 at 17, 37, 46). While these comments are based upon her race, she has not demonstrated that they were severe and pervasive. These few instances over the course of three years are not frequent enough to create an actionable hostile work environment claim. *See, e.g.*, *Williams v. CSX Transp. Co.,* 643 F.3d 502, 513 (6th Cir. 2011) (concluding derogatory comments made mainly over a two-day period were not pervasive and would not support hostile work environment claim); *Kelly v. Senior Ctrs., Inc.*, 169 F. App'x 423, 429 (6th Cir. 2006) (finding that two uses of the "n" word, three racist "jokes," and other comments about African-Americans did not

create an actionable hostile work environment claim partly because "such conduct . . . was not a daily or even a weekly event").

Furthermore, Bell cannot demonstrate that Defendant failed to address the conduct. *See, e.g., Slayton v. Ohio Dept. of Youth Servs.,* 206 F.3d 669, 677-79 (6th Cir. 2000) (employer may be liable for conduct where it fails to address or remedy the behavior); *Folkerson v. Circus Circus Enter., Inc.,* 107 F.3d 754, 756 (9th Cir. 1997) (employer may be liable for customer's actions where employer ratifies the behavior by not taking corrective action when informed of the conduct); *Johnson v. Bally's Atl. City,* 147 F. App'x 284, 286 (3d Cir. 2005) (same).

Bell testified specifically about two customers who used racial slurs towards her. (Doc. No. 22-4 at 30-32). She informed Defendant about their behavior, (Doc. No. 22-5 at 24, 26), and while Bell did not believe that Defendant acted because she reported seeing both customers in the casino again, she had no further contact with these customers and she had no further reports of racially derogatory language used by these customers. (Doc. No. 22-4 at 30 & 33); *see, e.g., U.S. E.E.O.C. v. GNLV Corp.,* No. 2:06-cv-1225, 2014 WL 7365871, at *16 (D. Nevada Dec. 18, 2014) (declining to find hostile work environment where "[i]n each instance where [plaintiff] reported the harassing conduct, [plaintiff] was never subjected to harassment by the offending customer again."); *Hales v. Casey's Mktg. Co.,* 886 F.3d 730, 735 (8th Cir. 2018) (finding employer took remedial action where upon complaint by employee, employer threatened to ban the customer and involve the police if further inappropriate behavior continued).

To the extent there were further instances that Bell did not report, Defendant cannot be liable for conduct for which it was not aware. *See, e.g., Stanley v. Lawson Co.,* 993 F. Supp. 1084, 1089-90 (N.D. Ohio 1997) (employee could not sustain hostile work environment claim where she failed to report customers' lewd language to employer); *Emery v. Uber Technologies, Inc.,* 3:20-cv-5156, 2021

WL 941879, at *7 (D.N.J. Mar. 12, 2021) (finding customers' use of racially suggestive language could not support hostile work environment claim where plaintiff failed to report it).

Taken together, Bell has failed to show how the alleged harassment she suffered from fellow employees was based upon race or sex, or that such alleged harassment was severe or pervasive. And in the instances where Bell alleged racial harassment by customers, she has again failed to demonstrate that the conduct was severe or pervasive, or that Defendant failed to sufficiently address the customer's behavior. Accordingly, she has failed to meet her burden of establishing a prima facie case of hostile work environment.

### 4. Intentional Infliction of Emotional Distress

In Ohio, intentional infliction of emotional distress ("IIED") is defined as "extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress to another." *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983) (abrogated on other grounds). "As a matter of law, the conduct must be more than mere insults, indignities, threats, annoyances, petty aggressions or other trivialities." *Mason v. U.S. Fid. & Guar. Co.*, 590 N.E. 2d 799, 804 (Ohio Ct. App. 1990) (internal quotation marks omitted). "It is difficult for a plaintiff to satisfy the standard for IIED, under Ohio law." *Al-Menhali v. Marriott Int'l Inc.*, No. 1:17-cv-1089, 2019 WL 13150207, at *10 (N.D. Ohio March 29, 2019).

Defendant challenged Bell's ability to present a prima facie case of IIED for multiple reasons, including her failure to demonstrate any "extreme or outrageous conduct", she presented no evidence of any emotional distress beyond her own testimony, she did not establish causation, and she failed to demonstrate that Defendant acted intentionally. (Doc. No. 22-1 at 25-26); *see Holub v. Saber Healthcare Grp., LLC*, No. 1:16-cv-2130, 2018 WL 1151566, at *5 (N.D. Ohio March 2, 2018) ("[I]n order for a claim of [IIED] to get past summary judgment, a plaintiff must present some evidence other than her own testimony."); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th

Cir. 1999) ("[A]n employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the [IIED].").

Bell did not oppose any of these arguments in her opposition or provide citation to any record evidence or controlling case law to support her claim for IIED. (*See* Doc. No. 27). As such, she has abandoned this claim. *Brown*, 545 F. App'x at 372 (collecting cases that hold "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

### 5. Deference to Unemployment Compensation Review Commission's Decision

Bell relies upon the decision of the Unemployment Compensation Review Commission ("UCRC") to demonstrate that her termination was "without just cause" and argues that I must grant deference to this decision in my analysis. (*See* Doc. No. 27 at 21-22). This argument is without merit.

Ohio law explicitly states that no UCRC decision "shall be given collateral estoppel or res judicata effect in any separate or subsequent judicial, administrative, or arbitration proceeding. . ." Ohio Rev. Code § 4141.281(D)(8). Courts at both the federal and state level have declined to consider UCRC findings in subsequent proceedings. *See, e.g., Williams v. United Steel Workers of Am.*, 487 F. App'x 272, 275-76 (6th Cir. 2012) (declining to consider unemployment decision when reviewing just cause termination); *Murray v. Kaiser Permanente*, 52 F. App'x 725, 727 (6th Cir. 2002) (finding "the agency's decision has no bearing on [plaintiff's Title VII case]."); *Butler v. Lubrizol Corp.*, 2015-Ohio-1216, 2015 WL 1446253, at *8 (Ohio Ct. App. Mar. 31, 2015) (eligibility for unemployment "is not relevant nor does it create a genuine issue of material fact as to whether appellant was terminated as a result of retaliation."). Thus, the findings of the UCRC are not relevant to my analysis.

### C.  Motion for Oral Argument, or in the alternative for Leave to File Surreply

Bell requested oral argument, or in the alternative for leave to file a surreply.  (Doc. No. 33).
Bell sought a further opportunity to be heard because "there is a significant disagreement regarding
the purpose of summary judgment in a discrimination case."  (*Id.* at 1).  Bell did not include a copy
of her proposed surreply with her motion.

Based upon the argument in Bell's motion, she has failed to justify the need for a surreply
beyond "[the] party's mere desire to make new arguments, rather than respond to new arguments
improperly raised in a reply."  *Chartis Specialty Ins. Co. v. Lubrizol Corp.*, No. 1:11 CV 369, 2013 WL
12130642, at *4 (N.D. Ohio Mar. 29, 2013).  Her proposed arguments seek to re-hash theories or
facts which were already addressed.  *See Baran v. Med. Device Techs., Inc.*, 666 F. Supp. 2d 776, 778 n.2
(N.D. Ohio 2009) (stating "the purpose of a sur-reply is not to permit re-argument after additional
reflection.").

Thus, I deny her request for oral argument or leave to file a surreply because she does not
identify any "new submissions and/or arguments" from the reply brief.  *Key v. Shelby Cnty.*, 551 F.
App'x 262, 265 (6th Cir. 2014); *see also id.* at 264-65 (whether to permit a surreply is within the
discretion of the district court); *S.S. v E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) ("The
interpretation and application of local rules are matters within the district court's discretion,. . .")
(internal quotation marks omitted).

### V.    CONCLUSION

For the reasons stated above, I grant Defendant's motion for summary judgment.  (Doc.
No. 22).  Further, I deny Plaintiff's motion for oral argument or, in the alternative, motion for leave
to file a surreply.  (Doc. No. 33).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
